IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ELIZABETH M. LEISS,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-2069

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION ................................ 2

II.   PRINCIPLES OF REVIEW ......................... 2

III.  FACTS ........................................ 4
    A.   Leiss' Education and Employment Background ......... 4
    B.   Vocational Expert's Testimony from Administrative Hearing
       Held on March 8, 2013 ........................... 4
    C.   Leiss' Medical History ............................ 5
       1.   Substance Abuse Treatment and Hospitalizations ..... 5
       2.   State Agency Non-Examining Physician Opinions ..... 5
       3.   Treating Physician's Opinions .................... 6

IV.  CONCLUSIONS OF LAW .......................... 9
    A.   ALJ's Disability Determination ..................... 9
    B.   Objections Raised By Claimant .................... 12
       1.   Dr. Piburn's Opinions ......................... 12
       2.   RFC Assessment ............................. 16

V.   CONCLUSION ................................. 18

VI.  ORDER ...................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Elizabeth M. Leiss on October 14, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits.[1] Leiss asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Leiss requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On January 2, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

3

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. Leiss' Education and Employment Background

Leiss was born in 1986. She is a high school graduate. While in school, she was enrolled in special education classes. At the administrative hearing, the ALJ determined that Leiss had no past relevant work.

### B. Vocational Expert's Testimony from Administrative Hearing Held on March 8, 2013[2]

At the supplemental hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who:

> can perform a full range of work at all exertional levels but with the following non-exertional limitations. She's restricted to simple work-related decisions with few workplace changes; simple, routine tasks; should have only brief and superficial interaction with the public and coworkers and occasional

---

[2] The administrative hearing held on March 8, 2013 was a supplemental hearing. The ALJ initially held an administrative hearing on March 9, 2012. However, at the March 9, 2012, hearing Leiss was not represented by counsel. The ALJ continued the hearing to allow Leiss to obtain an attorney to represent her at a future hearing. A second administrative hearing was held on May 30, 2012. Following the May 2012 hearing, the ALJ rendered an unfavorable decision. Leiss appealed the decision, and the Appeals Council for the Social Security Administration remanded the case back to the ALJ for further consideration of new medical evidence presented at the time of the appeal. Following the supplemental hearing held on March 8, 2013, the ALJ, again, issued an unfavorable decision. This time the Appeals Council upheld the ALJ's decision, and that second decision is presently before the Court for judicial review.

4

> interactions with supervisors. By brief and superficial I mean
> no direct interaction, working together to accomplish a task or
> involved in accomplishing a task.

(Administrative Record at 77.) The vocational expert testified that under such limitations, Leiss could perform the following jobs: (1) detailer, (2) laundry worker, and (3) salvager. The ALJ also inquired whether an individual with the limitations from hypothetical one, and who would miss three days of work per month and/or would also be unable to go to work at least one day per week, could find full-time employment. The vocational expert responded that under such limitations, Leiss would be precluded from all work.

### C. Leiss' Medical History

#### 1. Substance Abuse Treatment and Hospitalizations

In June 2010, Leiss entered substance abuse treatment for alcohol abuse, but only attended one treatment session. She re-entered alcohol abuse treatment in August 2010, but continued to struggle with attendance through October 2010. Also in August 2010, Leiss was hospitalized due to intoxication. In September 2010, she was hospitalized for attempting to take her own life. She was hospitalized on two additional occasions in February and March 2011, for separate instances of suicidal ideation. In November 2011, Leiss was hospitalized for an alcohol relapse. She returned to substance abuse treatment in February 2012, and completed her treatment program in August 2012. During the 2012 substance abuse time period, she more regularly attended group therapy sessions and AA meetings.

#### 2. State Agency Non-Examining Physician Opinions

On February 28, 2011, Dr. Russell Lark, Ph.D., reviewed Leiss' medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Leiss. Dr. Lark diagnosed Leiss with bipolar disorder, social phobia, panic disorder with agoraphobia, mixed avoidant/dependent personality disorder, and alcohol abuse. Dr. Lark

determined that Leiss had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lark determined that Leiss was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavior extremes, and respond appropriately to changes in the work setting. Dr. Lark concluded that:

> [Leiss] does have several mental [medically determinable impairments] that have been complicated by [her] alcohol abuse and medication non-compliance. [Medical evidence of record] and [activities of daily living] indicated that [Leiss] can handle daily responsibilities and navigate her community independently. Her memory, attention, concentration, and pace will vary with her mood, but are adequate for tasks not requiring sustained attention. [Leiss] will have some trouble interacting appropriately with others due to her personality disorders.

(Administrative Record at 481.)

### 3. *Treating Physician's Opinions*

On May 17, 2012, Leiss' treating psychiatrist, Dr. Marvin F. Piburn, Jr., M.D., at the request of Leiss' attorney, filled out "Mental Impairment Interrogatories" for Leiss. Dr. Piburn diagnosed Leiss with bipolar disorder (mostly depression), social phobia, mixed anxiety/panic disorder with agoraphobia, alcohol abuse, avoidant personality, and dependent personality. Dr. Piburn identified the following signs and symptoms for Leiss:

6

mood disturbance, emotional lability, anhedonia, pervasive loss of interest, feelings of guilt and worthlessness, difficulty thinking and concentrating, social withdrawal/isolation, blunt and flat affect, decreased energy, persistent irrational fears, generalized persistent anxiety, and pathological dependence. Dr. Piburn opined that Leiss' prognosis was poor. Dr. Piburn reviewed Leiss' treatment and response:

> [Leiss] has had 3 relapses of alcohol episodes in the past 3 years. Medications help control her depressive symptoms. She is working with Cedar Valley Community Support Services.

(Administrative Record at 565.) Dr. Piburn determined that Leiss had marked[3] difficulties in the ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday, complete a normal workweek, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dr. Piburn further determined that Leiss had the following limitations: moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, and frequent difficulties in maintaining concentration, persistence, or pace. Lastly, Dr. Piburn opined that Leiss would miss three or more days of work per month due to her impairments or treatment for her impairments.

---

[3] The interrogatories defined "marked" as noticeable difficulty and distraction from job activity for more than 20 percent of the workday or workweek.

On August 30, 2012, Dr. Piburn provided Leiss' attorney with a letter discussing the interplay between Leiss' alcohol abuse and bipolar disorder. In his letter, Dr. Piburn noted that generally 50 percent of all bipolar patients have abused alcohol or substances. Dr. Piburn explained that "[i]n part the wide fluctuations in mood state with manicky disinhibited states leads to abuse due to the loss of impulse control. And in part, patients seek to self medicate for bipolar symptoms."[4] Dr. Piburn further opined that:

> Genetics cause a lot of conditions to be seen co-morbid with bipolar. As stated, about half of bipolars have addictions, about half have attention deficit and about half have anxiety disorders. Typically these diagnoses overlap in the same patient. While re-evaluating [Leiss on] 8-29-12, I ran into a new diagnosis, namely Attention Deficit Disorder. In her case she has bipolar with alcohol abuse with Anxiety Disorder and with attention deficit. She has three distinct co-morbidities. . . . None of these co-morbidities devalue the diagnosis of Bipolar Disorder. Multiple co-morbidities are quite typical of its manifestation.

(Administrative Record at 610.) In discussing Leiss' history of relapses, Dr. Piburn explained that:

> [Leiss] had lied/minimized to me earlier about her "three" relapses from 2009 to 2012. In reality there were 8 documented relapses on alcohol: April 2010, June 2010, Aug 2010, Feb 2011, March 2011, May 2011, Nov 2011 and May 2012. Each relapse typically was followed by two or four days in psychiatry inpatient at Covenant Hospital or Allen Hospital.

(Administrative Record at 611.) In order to compensate for the "lie factor," Dr. Piburn multiplied her "8 drunk days in 36 months" by 10, and estimated that Leiss had 80 drunk days and 1000 sober days in 36 months. Dr. Piburn noted that "[s]ober days still prevail by a long ways-- primarily because the law forced the issue. Nevertheless most days

---

[4] Administrative Record at 610.

8

September 2009 through August 2012 have been sober days."[5] From a mental health standpoint, Dr. Piburn determined that:

> The data indicates fluctuant symptoms as one would expect with bipolar, good and bad turns. I detect clear patterns. During bad times she is at risk of medicine noncompliance, alcohol relapse or violence or suicidality. During good turns she is more likely to take her medications and to remain sober. But one thing emerges: there are no sustained remissions of mood nor of Anxiety Disorder.

(Administrative Record at 611.) Dr. Piburn concluded that:

> Despite the good and bad turns, basically all 36 months have had mood and anxiety symptoms. This is a "dual diagnosis" (mental/substance) patient. No doubt the administrative law has a problem of solomonic proportion when determining if this bipolar disorder and its comorbidities is the primary and main cause of her disability. But I believe the scientific facts establish a primary psychiatric illness (Bipolar) which exists even in the stone cold sober state.

(Administrative Record at 611.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Leiss is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and,

---

[5] Administrative Record at 611.

> if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as

age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Leiss had not engaged in substantial gainful activity since January 7, 2011. At the second step, the ALJ concluded from the medical evidence that Leiss had the following severe impairments: bipolar affective disorder, anxiety versus panic disorder with agoraphobia, avoidant personality traits, and substance use disorder. At the third step, the ALJ found that Leiss' impairments, including her substance use disorder, meet sections 12.04, 12.06, and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, also at step three, the ALJ determined that if Leiss stopped her substance use, she would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined that if Leiss stopped her substance use, her RFC would be as follows:

> [Leiss] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is restricted to simple work-related decisions with few workplace changes; simple, routine tasks; she should have only brief and superficial contact with coworkers and occasional interaction with supervisors, with brief and superficial meaning no direct interaction working together to accomplish a task or involved in accomplishing a task; and no contact with the public.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Leiss has no past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Leiss could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Leiss was not disabled.

### B. Objections Raised By Claimant

Leiss argues that the ALJ erred in two respects. First, Leiss argues that the ALJ failed to properly evaluate and weigh the opinions of her treating psychiatrist, Dr. Piburn. Second, Leiss argues that the ALJ's RFC assessment is flawed because it is not based on substantial evidence.

#### 1. Dr. Piburn's Opinions

Leiss argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Piburn. Specifically, Leiss argues that the ALJ failed to properly weigh Dr. Piburn's opinions. Leiss also argues that the ALJ's reasons for discounting Dr. Piburn's opinions are not supported by substantial evidence in the record. Leiss concludes that this matter should be remanded for further consideration of Dr. Piburn's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support

a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Piburn as follows:

[R]eview of the objective medical findings of record, including the psychiatrist's own treatment notes, failed to support his allegations that [Leiss] experienced disabling bipolar fluctuations in symptoms while remaining abstinent from continued alcohol abuse. In this regard, psychiatric treatment notes from [Leiss'] psychiatric admissions and in following up with Dr. Piburn from January through March 2011 revealed [Leiss'] condition significantly improved after being hospitalized and remaining abstinent from alcohol. More specifically, these records indicated decreasing depression, verbal anger, and no anxiety, homicidal ideation, suicidal ideation, self-injury, or aggression while abstaining (Exhibits 5F; 9F; 10F). Similarly following admission for abusing alcohol in May 2011, Dr. Piburn reported that [Leiss'] mood was better, she had only some anxiety, less anger, and was not experiencing any suicidal ideations. Subsequently, a February 2012 Pathways substance abuse evaluation indicated [Leiss] remained abstinent with mental status findings indicating she was appropriate, cooperative, and calm. She reported no suicidal ideations, her memory was intact and her concentration was found to be normal. Psychiatric treatment notes following this evaluation showed improved mood, some continued anxiety, okay anger symptoms, and no suicidal ideations. Additionally, at this time, [Leiss] reported less anxiety and was attending several AA meetings weekly, which would tend to indicate her social anxiety was generally not as severe as she generally alleged (Exhibits 15F; 16F). These reports do not support Dr. Piburn's assessment of [Leiss'] cognitive and social limitations.

Furthermore, recent psychiatric and therapy evaluations indicated [Leiss'] mental status findings remained generally intact absent alcohol use, which appeared directly contrary to the opinions of Dr. Piburn expressed above. While treatment notes indicated some ongoing depression and anxiety, mental status evaluations during therapy sessions noted generally normal findings including appropriate appearance, speech, hygiene and dress, eye contact, behavior, thought processes and content, and concentration. [Leiss] reported hobbies included reading, watching movies, playing on the computer,

and going to the park with her daughter. Additionally, despite being denied disability, [Leiss] had stable functioning and her mood had improved (Exhibit 19F). While [Leiss] subjectively reported problems with focus and concentration, there appeared to be no objective findings of problems concentrating during these clinical evaluations. Notably, Dr. Piburn did not place [Leiss] on medications following a diagnosis of ADHD, which would tend to indicate her attention and concentration were intact such that she did not require medications (Exhibit 17F). Significantly, during further therapeutic evaluation in November 2012, the therapist reported that [Leiss'] concentration was appropriate. Mental status findings indicated flat affect and some inappropriate behavior consisting of isolating and nervousness; however, the remainder of the findings were generally intact including appropriate appearance, dress, hygiene, insight, eye contact, mood, orientation, speech, though[t] content, and thought process (Exhibit 18F). Most recently, [Leiss] reported that she was doing "okay" outside some vague "paranoia" symptoms. Notably, contrary to his opinions, Dr. Piburn reported [Leiss'] anger, anxiety and depression were "okay" and noted that she was getting good response from treatment (18F, pgs 5-7). [Th]ere is nothing in the record to suggest that, if [Leiss] abstained from substance abuse, she would have multiple job absences per month[.] Dr. Piburn did not provide any basis for that comment, and [Leiss'] reported daily activities contradict such a limitation. Based on these substantial inconsistencies between the opinions provided and the objective medical findings of record, the undersigned has afforded the opinions of Dr. Piburn little weight.

(Administrative Record at 28-29.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Piburn. The Court also finds that the ALJ provided "good reasons" for granting only "some" weight to Dr. Piburn's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court

upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. RFC Assessment

Leiss argues that the ALJ's RFC assessment is flawed. Specifically, Leiss argues that the ALJ's RFC assessment is incomplete because it does not properly account for all of her impairments and functional limitations. Leiss also argues that the ALJ's RFC assessment is not supported by substantial evidence in the record. Leiss maintains that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record

fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In his decision, the ALJ determined that:

> In sum, the above residual functional capacity assessment is supported by objective medical evidence contained in the record. Treatment notes in the record do not sustain [Leiss'] allegations of disabling symptoms while not abusing alcohol. The State agency opinions are internally consistent and consistent with the evidence as a whole. The credibility of [Leiss'] allegations is weakened by consistent and continued alcohol abuse. [Leiss] does experience some symptoms and limitations but only to the extent described in the residual functional capacity above.

(Administrative Record at 32.) Furthermore, in determining Leiss' RFC, the ALJ thoroughly addressed and considered Leiss' medical history and treatment for her complaints.[6] The ALJ also properly considered and thoroughly discussed Leiss' subjective allegations of disability in making his overall disability determination, including determining Leiss' RFC.[7]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Leiss' medical records, observations of treating physicians, and Leiss' own

---

[6] *See* Administrative Record at 22-30 (providing a thorough discussion of Leiss' overall medical history and treatment).

[7] *Id.* at 30-32 (providing a thorough discussion of Leiss' subjective allegations of disability).

description of her limitations in making the ALJ's RFC assessment for Leiss.[8] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Leiss' assertion that the ALJ's RFC assessment is flawed is without merit.

## V. CONCLUSION

The Court finds that the ALJ properly considered and weighed the opinions of Dr. Piburn. The Court also finds that the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 11th day of August, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[8] *Id.* at 22-32 (providing thorough discussion of the relevant evidence for making a proper RFC determination).